1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

MICHAEL EUGENE HOLLIS,

             Plaintiff,

       v.

DR. LAIRD, et al.,

             Defendants.

_____/

Case No. 1:11-cv-00748-AWI-SKO (PC)

THIRD SCREENING ORDER DISMISSING ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM UNDER SECTION 1983 AND DIRECTING CLERK'S OFFICE TO ENTER JUDGMENT

(Doc. 17)

### Screening and Dismissal Order

I.   **Procedural History**

On May 10, 2011, Plaintiff Michael Eugene Hollis ("Plaintiff"), a federal prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983; *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971); and the Federal Tort Claims Act.[1]  Plaintiff's original complaint was dismissed for failure to state a claim, and his first amended complaint was dismissed for failure to comply with the first screening order and failure to comply with Federal Rule of Civil Procedure 8(a).

---

[1] During the time period relevant to this suit, Plaintiff was a federal inmate housed at the Fresno County Jail in Fresno, California.  Plaintiff was a pretrial detainee from August 19, 2008, to December 1, 2008, and a convicted prisoner from December 1, 2008, to June 16, 2009, at which time he was transferred from the jail.  *United States v. Hollis*, 1:08-cr-00276-OWW (E.D.Cal.); 2nd Amend. Comp., court record p. 16.  Plaintiff is currently incarcerated at Federal Correctional Institution Big Spring in Big Spring, Texas.

1   On August 4, 2014, Plaintiff filed a second amended complaint in compliance with the

2   Court's screening order of March 26, 2014.[2]  Plaintiff's second amended complaint sets forth

3   claims against the County of Fresno and county employees under section 1983, arising out of

4   unconstitutional conditions of jail confinement in 2008 and 2009.

5   **II.**      **Screening Requirement and Standard**

6   The Court is required to screen complaints brought by prisoners seeking relief against a

7   governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

8   The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

9   legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that

10  seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),

11  (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

12  shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

13  state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

14  A complaint must contain "a short and plain statement of the claim showing that the

15  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

16  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

17  conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937

18  (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and

19  courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572

20  F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual

21  allegations are accepted as true, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.

22  Under section 1983, Plaintiff must demonstrate that each defendant personally participated

23  in the deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  This

24  requires the presentation of factual allegations sufficient to state a plausible claim for relief.  *Iqbal*,

25  556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  Prisoners

26  proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and

27  to have any doubt resolved in their favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

28  _____

[2] On April 21, 2014, Plaintiff was granted a ninety-day extension of time to comply with the second screening order.

1  (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the

2  plausibility standard, *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

3  **III.   Discussion**

4     **A.      Background**

5        When Plaintiff initially filed this suit, his claims arose from the alleged failure of jail staff

6  to provide him with an effective over-the-counter laxative for his severe constipation.[3]   Plaintiff

7  also alleged, very generally, retaliation against him.  Plaintiff's complaint was twenty-six pages in

8  total length, fifteen of which formed the complaint and the remainder of which were exhibits.

9        While the Court found that Plaintiff's allegations were sufficient to show the existence of a

10  serious medical need necessitating care,[4] *see Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011,

11  1017-18 (9th Cir. 2010) (Eighth Amendment standard requiring inmates show (1) subjective

12  deliberate indifference to (2) an objectively serious medical need applies to pretrial detainees),

13  Plaintiff's complaint was dismissed, with leave to amend, because he failed to allege facts

14  showing the requisite causal connection between constitutional violation alleged and the named

15  defendants, *e.g.*, *Iqbal*, 556 U.S. at 676-77; *Lemire v. California Dep't of Corr. and Rehab.*, 726

16  F.3d 1062, 1074-75 (9th Cir. 2013).   Plaintiff also failed to allege any facts supporting the

17  existence of a viable retaliation claim.  In dismissing Plaintiff's complaint with leave to amend to

18  cure the deficiencies, Plaintiff was cautioned against adding new, unrelated claims in his amended

19  complaint.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011);

20  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

21        Despite this admonition, Plaintiff's amended complaint morphed from events confined to

22  lack of adequate medical treatment for constipation to a one-hundred forty-seven page morass of

23  new claims and parties, seventy pages of which comprised the complaint alone.   Plaintiff's

24  ─────────────────────

25  [3] Milk of magnesia was effective for Plaintiff.  It was not routinely provided to inmates by jail medical staff, however, because it was an over-the-counter canteen item available for purchase.  Problems arose for Plaintiff when he could

26  not obtain the item from the canteen because it was out of stock, and Metamucil, the alternative laxative available at the canteen, did not work for Plaintiff.

27  [4] Allegedly, Plaintiff's condition caused him severe pain and rectal bleeding, and it caused reinjury of the area where

28  he previously had surgery to remove an anal fistula.

amended complaint was dismissed for failure to comply with the terms of the first screening order and with Rule 8.  Plaintiff was again admonished regarding the pursuit of unrelated claims in a single action.  Furthermore, the Court noted Plaintiff was attempting, in bad faith, to re-litigate claims he knew had been dismissed, with prejudice, and were therefore barred by the doctrine of res judicata.  Plaintiff was also warned as follows:

> It has not escaped the Court's attention that some of the claims added in the amended complaint were raised and abandoned by Plaintiff in a separate civil action.  *Hollis v. Shumate*, 1:11-cv-00747-AWI-GBC (PC).  The pendency of this action does not serve as a proverbial kitchen sink where Plaintiff may deposit all of his various claims arising out of his confinement at the Fresno County Jail.  *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "mishmash" complaints).

(Doc. 14, p. 2 n.2.)

Despite repeated admonitions, the Court is again faced with a "kitchen sink" complaint. Although Plaintiff's second amended complaint is more manageable in length, Plaintiff is still attempting to broaden this lawsuit well beyond that which was contemplated in the original complaint or tolerated by the Federal Rules of Civil Procedure, and in violation of the Court's screening orders.  Due to the circuitous nature of Plaintiff's second amended complaint, including obfuscation of relevant facts with tangential matters and attempts to relate unrelated claims under an umbrella of supervisory and/or municipal liability, the Court sets forth the following detailed summary of Plaintiff's factual allegations.

**B.**     **<u>Summary of Allegations</u>**[5]

Plaintiff was incarcerated at the Fresno County Jail from August 18, 2008, to June 16, 2009, and he alleges staff at the jail retaliated against him for exercising his right to petition the government for redress, in violation of the First Amendment; deprived him of a protected liberty interest without due process of law in violation of the Fifth Amendment; and subjected him to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  Plaintiff names the following defendants: County of Fresno; Department of Public Health Director Edward Moreno, M.D.; Correctional Health Division Manager George Laird. M.D.; Correctional Health

---

[5] To the extent possible, the Court endeavors to separate the unrelated events giving rise to Plaintiff's claims.

Medical Director Pratap Narayen, M.D.; Than Aw, M.D.; Captains Rick Hill and Marilyn Weldon; a John Doe Sergeant; and four John Doe Deputies.

### 1.   Placement in Medically Inappropriate Housing

Plaintiff, who weighed almost three-hundred pounds at the time of his arrest and was "heavy," describes his physical condition at the time he entered the Fresno County Jail as follows:[6]

> Plaintiff is a disabled American.  Plaintiff's disability is based upon his seven orthopaedic surgeries and reconstructions in his right knee, his right hand, and his left forearm.  Plaintiff has been a disabled American since 1993.
>
> Plaintiff suffers from severe post-surgical osteoarthritis in his right hand and his right knee.  Plaintiff has two fingers missing and severe crush injury trauma in his right hand.  The right knee has steel and screws in it and the knee joint is bone-on-bone with no cartilidge [sic].  The left forearm was fused with bone from Plaintiff's left hip and it's subject to spiral fractures when stressed.  The Plaintiff is not fit for fighting or defending himself from attack given his disability, his white ethnicity, and of course, sex offender charges.

(Doc. 17, 2nd Amend.Comp., court record pp. 8, 9.[7])

On August 19, 2008, during the intake procedure following Plaintiff's arrest, Plaintiff informed jail staff of his medical condition.  (*Id.*, pp. 8, 34, 35.)  However, a female deputy assigned Plaintiff to the North Jail, 5th Floor, C-pod, a housing unit which required Plaintiff to use a flight of approximately twenty-five stairs to use the restroom.  (*Id.*, pp. 5, 8, 36, 38.)  Plaintiff alleges that as a result of having to climb stairs, he was in pain and his right knee swelled.  (*Id.*, p. 36.)  Additionally, Plaintiff alleges that he was not provided with pain medication, and he was improperly assigned to a housing unit with stairs in retaliation against him for previously complaining to the shift sergeant about not receiving lunch.  (*Id.*)

Plaintiff filed a grievance regarding his housing assignment on August 20, 2008, and it was granted on September 1, 2008, with a notation that Plaintiff would be housed in a lock-down cell in the main jail.  (*Id.*)  Plaintiff was transferred to a medically-appropriate cell in the main jail with

---

[6] Although Plaintiff mentions he is disabled in his complaint, he is not pursuing a claim for violation of the Americans with Disabilities Act, appropriately so given that "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons*, 609 F.3d at 1022.

[7] Page numbers cited to herein correlate with the Court's CM/ECF system pagination.

1   a toilet and shower that did not require him to use stairs.  (*Id.*, p. 11.)  However, approximately

2   twenty-four hours later, Plaintiff was "thrown back" into the North Jail, 5th Floor, C-pod, by four

3   Doe custody employees at the direction of their Doe sergeant, despite his visibly swollen knee;

4   and Plaintiff remained there until September 12, 2008.[8]  (*Id.*, pp. 5, 11.)

5          Although Plaintiff alleges that an unknown staff member noted on September 1 or 2, 2008,

6   there was nothing wrong with Plaintiff, the medical note relied on by Plaintiff documented his

7   request for a pod where he did not have to climb stairs to use the bathroom, his past knee surgery

8   in 1995, a swollen right knee, and complaints of grinding when ambulating.  (*Id.*, pp. 11, 38.)  On

9   September 2, 2008, another note documented that Plaintiff could go to general population with a

10  lower bunk on a lower tier.  (*Id.*, p. 38.)

11         Plaintiff "speculates" that the defendants hated him because of the sex offense for which he

12  was arrested, and he asserts that "he is a member of at least one protected class: Disabled

13  American, a grievance writer/inmate litigator seeking free speech, and/or a sex offender who

14  suffered atypical hardship because of who is he."  (*Id.*, p. 12.)  Plaintiff concludes that he was

15  subjected to "hate crimes."  (*Id.*)

16         Plaintiff alleges that "Defendant Weldon is responsible for maintaining FCJs [sic] contract

17  with the USMS and the deficiencies set out herein implicates [sic] her office and . . . her sphere of

18  responsibility;" and that Defendant Hill "is responsible for custody operations, classification,

19  grievances, etc., and the deficiencies cited herein implicate his office and his sphere of

20  responsibility."  (*Id.*, p. 9.)

21         Plaintiff submitted several sick call request slips and was seen by a medical staff member,

22  who "lied" and told Plaintiff he would be receiving a muscle rub for his knee to enable him to

23  climb stairs.  (*Id.*, p. 12.)  Plaintiff never received the muscle rub, however.  (*Id.*)

24         On September 7, 2008, Plaintiff mailed a grievance to Defendant Hill.  (*Id.*, p. 13.)  By that

25  time, his knee was swollen and hot, and he was unable to get in and out of the three-man bunk

26  without enduring stabbing pain.  (*Id.*)  Even with his pain medication, Plaintiff's pain level was

27  barely tolerable.  (*Id.*)

28
───────────────
[8] These four officers and their sergeant are the Doe defendants.

1   On September 12, 2008, Sergeant Shumate called Plaintiff to his office, and, visibly upset,

2   said, "So you're the one who sent the grievance to the Captain (Hill).  We're going to lock you

3   down for medical reasons.  We may put someone in your cell from time to time."  (*Id*.)  While

4   Sergeant Shumate told Plaintiff that medical lock-down was the only option he had to

5   accommodate Plaintiff's medical needs, Plaintiff alleges that he could have gone to "open pod

6   AD-SEG" or medical, and out of the three options, an "irate" Sergeant Shumate was sending him

7   to the worst one: "24/7 punitive medical lockdown."  (*Id*.)

8   ## 2.   <u>Assignment of Mentally Unstable Inmate to Cell</u>

9   On February 2, 2009, Deputy Oliver placed a paranoid, schizophrenic inmate with bipolar

10  disorder in Plaintiff's medical lock-down cell at approximately 4:30 a.m.  (*Id*., pp. 14, 41.)

11  Plaintiff alleges that the inmate had a history of officer assault and rage-induced attacks, causing

12  Plaintiff to fear for his safety, particularly in light of his physical impairments.  (*Id*.)

13  Plaintiff filed a grievance that day and the grievance was deemed moot by staff in light of a

14  call from the United States Attorney's Office notifying jail classification staff that Plaintiff feared

15  for his safety.  (*Id*., pp. 14, 41, 42.)  Plaintiff alleges that "the defendants deny improper motive for

16  [placing] the Plaintiff with the insane man but they did not provide any alternative explanation."

17  (*Id*., pp. 14, 42.)  Plaintiff alleges that the County of Fresno's jail improperly denies mentally ill

18  inmates medication and then uses excessive force against them when they act out.  (*Id*., p. 14.)

19  Plaintiff alleges that he tried to file another grievance but he was denied access to a

20  grievance form by a staff member Plaintiff was suing in a different case.  (*Id*., pp. 14, 43.)

21  Plaintiff alleges that the mentally ill inmate was well known to Defendant Hill's

22  classification staff, and the inmate told Plaintiff it took four officers to get him into a "super

23  lockdown single cell."  (*Id*., p. 15.)  The inmate went to court on February 2, 2009, to be declared

24  mentally unfit to stand trial, and he told Plaintiff about cutting people and stabbing them with

25  pencils.  (*Id*.)  Plaintiff alleges that jail staff knew the inmate was not getting his medication and

26  was dangerous without medication, and that when Officer Oliver put the inmate in Plaintiff's cell,

27  he told Plaintiff to push the call button if there was any trouble.  (*Id*.)

28

1   Plaintiff alleges that he was housed with the psychotic inmate for ten days, and he was
2   housed for one-hundred sixteen days with dangerous gang members who had started fights
3   elsewhere in the jail. (*Id*.) Plaintiff alleges that he was subjected to one-hundred twenty-six "days
4   of reckless endangerment of the Disabled American Plaintiff in the 'classification plan' ('real jail')
5   the classification department used against Plaintiff to punish him for being a sex offender,
6   grievance write, and complainer;" and that "County of Fresno, her Health Department, Jail
7   Medical Staff, and Jail Classification Staff are all sued for forcing a medical lockdown inmate to
8   co-exist with gang members who had been fighting and with a patient that they know cannot get
9   the right meds because they are expensive." (*Id*.)

10                              **3.    Constipation**

11   On August 19, 2009, Plaintiff began to have digestive system problems, and on August 28,
12   2009, he bought Metamucil from the jail's commissary. (*Id*.) The Metamucil did not work and
13   Plaintiff attempted to buy milk of magnesia on September 4, 2009, which was the next
14   commissary day. (*Id.*, pp. 15-16.) The commissary did not have the milk of magnesia in stock,
15   and Plaintiff filed a sick call request slip regarding his constipation, which was causing him pain
16   and bleeding. (*Id.*, p. 16.)

17   In 2004, Plaintiff had surgery to remove an anal fistula and the old wound was aggravated
18   by his constipation, causing him pain. (*Id*.) Plaintiff alleges that Defendants Laird and Aw were
19   deliberately indifferent to his serious medical needs. (*Id*.)

20   Plaintiff filed daily sick call slips until September 4, 2009, at which time he filed a
21   grievance. (*Id*., pp. 16, 46.) Plaintiff complained of locked bowels, rectal bleeding, and the
22   aggravation of his old wound, but jail staff and Defendant Hill denied his grievance on September
23   9, 2008. (*Id.*, pp. 16, 46, 47.)

24   Plaintiff alleges that pursuant to jail policy, "as enforced by defendant Captain Hill,"
25   Metamucil and milk of magnesia are available over-the-counter medications for constipation, but
26   they are subject to being out of stock, demonstrating the flaw in the system given that the
27   commissary supply is hit or miss by week. (*Id.*, 17.)

28

On September 7, 2008, an officer took Plaintiff to the late night sick call line and asked the nurse if Plaintiff could be helped because he had not had a bowel movement in ten days.  (*Id*.) The nurse gave Plaintiff four doses of milk of magnesia in cups and some warm water.  After Plaintiff returned to his housing unit, the medication worked and provided him with relief.  (*Id*.)

Plaintiff alleges that Defendant Laird's denial of his grievance ridiculed his complaint, and that the response made it clear it would take longer for Plaintiff to obtain medical care and the jail was not going to pay for over-the-counter medication for "mere constipation."  (*Id*., pp. 17, 47.)

> Plaintiff alleges
> Defendant Dr. Laird, MD, is clearly too aloof, uncaring, and unqualified to administer health care to those who are incarcerated at FCJ.  The County of Fresno, et al., OTC medication plan of making inmates strictly depend on a huge, busy company's supply chain to access plain, everyday remedies like laxatives and antacids is clearly no plan at all.  It is willful and deliberate indifference to wholesale suffering inflicted on the indigent, the illiterate, and other similarly situated inmates, failed by FCJ [sic] flawed "OTC System."
>
> However, a bleeding person citing specific, probable cause for the bleeding should be considered a patient indeed to a reasonable physician's mind.  The trivial cost of a simple laxative vs. the human misery caused by denial of simple laxative is deliberate indifference.  Inmates have no control over commissary issues times, inventories or effectiveness of the products sold.

(*Id.*, p. 18.)

Plaintiff alleges that Defendant Laird was already angry at him for filing grievances and telling United States Magistrate Judge Sandra M. Snyder on August 22, 2008, that Defendant Laird was denying Plaintiff his arthritis medication and jail staff was requiring Plaintiff to climb stairs even though he was medically unfit to do so.[9]  Plaintiff alleges that Defendant Laird "willfully and maliciously chose to allow the sex offender Plaintiff to suffer in a retaliatory spirit for getting his attorney, Mr. Chavez, to call Dr. Laird personally."  (*Id*.)

The commissary restocked milk of magnesia and Plaintiff purchased it until his money ran out, during which time he did not suffer from constipation.  (*Id.*, p. 19.)

On November 15, 2008, Plaintiff had his second over-the-counter medication issue and he submitted another sick call slip complaining of locked bowels and rectal bleeding.  (*Id.*)  Plaintiff did not receive any response and he put in another sick call slip on November 22, 2008.  (*Id.*)

---

[9] The exhibit cited to in support of this assertion is merely a minute order noting that Plaintiff's defense attorney stated Plaintiff needed medication and he would "call Dr. at the jail."  (*Id.*, pp. 18, 40)

Plaintiff began attempting to get a grievance slip from staff, which was difficult given that he was in a medical lock-down cell. (*Id*.) Plaintiff submitted a third sick call slip on November 23, 2008, and threatened to write a grievance. (*Id*.)

On November 25, 2008, Plaintiff submitted a grievance regarding his constipation, and he was seen by Defendant Aw during sick call. (*Id.*, pp. 20, 50.) Defendant Aw prescribed "mag pills," which worked until Plaintiff ran out of them. (*Id*., p. 20.)

On January 23, 2009, Plaintiff had his third over-the-counter medication issue and he put in sick call slips regarding locked bowels and rectal bleeding on January 23, 26, 27, and 29, 2009. (*Id.*) On February 3, 2009, he submitted a grievance and was seen by Defendant Aw, who again prescribed "mag supps," which temporarily resolved the issue. (*Id.*, pp. 20, 52.)

On May 17, 2009, Plaintiff had his fourth over-the-counter medication issue and he submitted sick call slips on May 17, 18, and 19, 2009. (*Id*., p. 20.) Plaintiff was very upset and wrote an "emergency treatment grievance." (*Id*., pp. 20, 54.) On May 20, 2009, Plaintiff submitted another grievance, but he was transferred from the jail before he received any response. (*Id*., pp. 20, 56.)

On May 21, 2009, Plaintiff submitted an emergency sick call slip complaining it had been eight days since he had a bowel movement and he was feeling bad. (*Id*., p. 20.) Plaintiff went to sick call that day and received milk of magnesia, which relieved him. (*Id*., p. 21.) However, his "mag sup" was not renewed. (*Id*.) Plaintiff alleges that he "believes the County of Fresno Administration and the JMS (jail medical staff) defendants knew Plaintiff was leaving FCJ soon and that was that." (*Id.*)

On May 26, 2009, Plaintiff filed another grievance on May 26, 2009, which did not receive a response. (*Id.*)

On May 27, 2009, Plaintiff saw Defendant Aw and received milk of magnesia that evening. (*Id.*) Plaintiff alleges that "[t]he pattern had settled into a deal whereby Plaintiff could fight all he wanted, he was only going to get MOM (milk of magnesia), not the daily 'mag supp,' after filing a grievance. And that was only one dosage of MOM – a dosage of MOM that would

1   be freely given to any needy inmate upon request at any pill call Plaintiff had ever seen in his

2   'extensive criminal history.'"   (*Id.*)

3       On May 27, 2009, Plaintiff drafted a motion seeking a court-ordered transfer to a medical

4   facility for filing in his criminal case, and his defense attorney sent Defendant Laird a

5   memorandum on June 1, 2009, regarding Plaintiff's need to be checked by medical staff for his

6   stated digestive issues.  (*Id.*, pp. 21, 59.)  On June 5, 2009, Plaintiff received one dose of milk of

7   magnesia during evening pill call and he received a single dose every evening until he was

8   transferred from the jail on June 16, 2009.

9                              **4.     Hypoglycemia and 1800 Calorie Diet**

10      Plaintiff is diabetic and for two years prior to his arrest, he took Metformin.  On January 9,

11  2009, Plaintiff's diet was changed from 2200 calories a day to 1800 calories a day following his

12  complaint to Defendant Aw during sick call about "starving in the hyper cold FCJ."  (*Id.*)  Plaintiff

13  had low "chem stick" readings of 52 and 71 that day, and Plaintiff diet was reduced even though

14  he was begging for more calories rather than fewer calories in an effort to fight the cold and

15  hypoglycemia.  (*Id.*, p. 22.)  Plaintiff alleges that his diet was reduced because he used the

16  grievance process to complain, and that he spent the next three months suffering from "insanely

17  cold jail temperatures with clinically documented symptoms of hypoglycemia."[10]  (*Id.*)

18      On January 10, 2009, Plaintiff filed a grievance complaining that he saw Defendant Aw on

19  January 8, 2009, and although Defendant Aw agreed when Plaintiff said his blood sugar was low

20  and he thought he needed a diabetic snack, Plaintiff diet was cut the next day, resulting in a

21  hypoglycemic attack.  (*Id.*, pp. 24, 64.)  Plaintiff's grievance was "not sustained," and the staff

22  member who responded on January 12, 2009, stated that the issue was not grievable and Plaintiff

23  was currently on an 1800 calorie diet with a snack per the jail medical staff clinician.[11]  (*Id.*, pp.

24  24, 64, 65.)

25

26  [10] Per Plaintiff's medical record, on January 18, 2009, he was placed on an 1800 calorie diet for obesity, and Plaintiff
    alleges that when he was arrested, he was heavy at almost three-hundred pounds.  (*Id.*, pp. 9, 61.)

27  [11] Plaintiff assigns responsibility to Defendant Hill but it is unclear whether Defendant Hill personally signed the
28  grievance as the reviewing supervisor or Plaintiff is merely assigning culpability to Defendant Hill based on his
    position as jail captain

On January 19, 2009, Plaintiff filed another grievance complaining that while he was being assured his diet had been changed and the diet tag on his lunch back did reflect the change from 1800 calories back to 2200 calories, his food was still short.  (*Id.*, pp. 24, 66.)  On January 22, 2009, Plaintiff's grievance was "not sustained" and Plaintiff was informed that per an audit of his diet, his current diet met the requirements outlined by the jail's dietician and the portions Plaintiff was receiving were proper.  (*Id.*, pp. 24, 66, 67.)

On January 30, 2009, Plaintiff was informed by a kind nurse that low blood sugar readings in the 70s and 80s may not be dangerous but low blood sugar makes one feel rundown and miserable.  (*Id.*, p. 22.)  Plaintiff alleges that he had blood sugar readings in the 50s and 60s, and if the kind temporary nurse was able to tell him why he was feeling so bad all the time, then other jail staff knew he was suffering from low blood sugar.  (*Id.*)  Plaintiff alleges that based on his subsequent experience with the Bureau of Prisons, he now knows he should have been getting glucose tablets in the jail for his hypoglycemia, and even after his diet was changed back to 2200 calories on January 16, 2009, he was getting low blood sugar readings and feeling rundown.  (*Id.*, pp. 22, 60)

Plaintiff alleges that he had low blood sugar readings twenty-eight times in January and February 2009, and "Defendant Aw is sued for punitive damages for altering Plaintiff's diet in Jan/Feb 2009 causing Plaintiff to suffer needlessly and wantonly with unchecked hypoglycemia." (*Id.*)  Plaintiff alleges that he suffered from extreme hunger and sensitivity to the cold.

On February 20, 2009, Plaintiff's refusal to submit to "chem stick" testing was documented, a refusal Plaintiff alleges was prompted by his decision to no longer submit to the two "psycho" escorting officers who harassed and intimidated him.  (*Id.*, pp. 23, 24, 68.) However, although Plaintiff alleges that the document shows medical staff knew his blood sugar was out of control, this allegation is belied by the medical record, which merely reflects Plaintiff was counseled that the risks and possible consequences of refusing testing were "blood sugar out of control, diabetes problems, hospitalization, etc." (*Id.*, pp. 24, 68.)

Plaintiff attempted to file a grievance regarding his food and low blood sugar, but the grievance was rejected on February 27, 2009, as "issue ungrievable."  (*Id.*, pp. 24, 69.)  Plaintiff

alleges that by then, he was in the coldest part of the jail and was suffering 40 degree temperatures without enough food to sustain him.  (*Id.*, p. 24.)  While Plaintiff starved in the cold without any extra food, Officer Rojas smuggled extra food to gang members.  (*Id.*, p. 25.)  Plaintiff alleges that "while JMS Defendants were starving the heavy Plaintiff that [sic] his diabetes was thrown out of control by the same situation," and "JMS Defendants knew that Plaintiff could not produce enough energy with a program of starvation and unconstitutional housing temperatures to cause them too much trouble."  (*Id.*)

Plaintiff alleges that his medical record dated February 27, 2009, shows jail medical staff was aware he was suffering from the cold and hypoglycemia.  (*Id.*, pp. 25, 70.)

Plaintiff alleges that his crime was briefly in the news and he detected the aura of hate toward him, and someone pointed out a blue sign in the medical clinic, which read, "To patients: JMS is not allowed by custody to make FCJ inmates too comfortable."  (*Id.*, p. 25.)  Plaintiff alleges staff was openly telling inmates that if they were too ill, they were in big trouble, and Plaintiff was in big trouble.  (*Id.*)

On February 16, 2009, Plaintiff went to sick call and informed a nurse that he was being harassed and intimidated during escorts for "chem stick" testing.  (*Id.*, p. 25.)  Later that day, Plaintiff found out that the Ultram he was given for knee pain was being discontinued.  (*Id.*, pp. 25, 71.)  On February 23, 2009, when Plaintiff was housed in colder conditions on disciplinary lock-down, he was still without any Ultram and he was suffering from knee pain, hypoglycemia, and a spinal cyst.  (*Id.*, p. 25.)  Plaintiff also alleges that "he was being retaliated upon by the defendants in another lawsuit."  (*Id.*)

Plaintiff alleges that he was unable to obtain a sick call slip from staff until February 25, 2009, at which time he sent in a slip complaining about arthritis pain and cold, numb feet.  (*Id.*, pp. 26.)  Plaintiff alleges that he "got no response from Drs. Laird or Aw [sic], and sat in that freezebox meat locker until March 4, 2009," when he received the Ultram discontinuation notification.  (*Id.*)

Plaintiff alleges that clinical notes by Defendants Laird and Aw dated August 26, 2008, September 25, 2008, and April 21, 2009, document his chronic knee pain, but someone with

different hand writing wrote that he walked normally. (*Id*.) Plaintiff asserts that some unqualified person was trying to cause him harm by accusing him of malingering. (*Id*.)

Plaintiff went without his pain medication from February 16, 2009, to March 5, 2009, at which time he filed a grievance. (*Id*.) As per standard pattern, Plaintiff was summoned to sick call where he saw Defendant Aw, who reinstated the Ultram. (*Id*.) However, Plaintiff did not receive his Ultram until March 8, 2009, after he called his defense attorney. (*Id*.) Plaintiff alleges that Defendants Laird and Aw denied him Ultram for twenty-one days "despite their full knowledge of Plaintiff's [sic] being a Disabled American, his 'chronic knee pain' they documented, and his aggravated suffering with his arthritis and his diabetes in that freezebox cell in the Hole." (*Id*.)

On March 23, 2009, Plaintiff was released from "the hole," and housed in another two-man lock-down cell. (*Id*.) Plaintiff's cellmate already had the lower bunk, and Defendants Laird and Aw had rescinded his lower bunk, no stairs restriction. (*Id*., p. 27.) The other inmate refused to give up the lower bunk and custody staff told Plaintiff there was no restriction in the computer. (*Id*.)

Plaintiff attempted to file another grievance on March 25, 2009, so that he could inform Defendant Hill's custody staff that he was being improperly housed, but an officer refused to give him a form. (*Id*.)

Plaintiff filed emergency sick call request slips on March 25, 26, 27, and 28, 2009; and on March 27, 2009, Plaintiff submitted a classification/medical grievance in which he complained he was a disabled American housed on the main floor and he was ready to back to the hole in order to get a bunk.[12] (*Id*.) Plaintiff alleges that "JMS Defendants" mistakenly treated his grievance as seeking to be moved from the hole to medical housing, and the grievance was denied by Defendant Hill or his designee. (*Id*., pp. 27, 78.)

---

[12] As Plaintiff was reminded in the second screening order when he attempted to relitigate the claims in this case, his claims against United States Marshal Russell York and Sheriff Margaret Mims were dismissed, with prejudice. (Doc. 14, p. 2, n. 3.) Although Plaintiff refers to York and to matters he brought to the district court's attention during his criminal proceedings, those allegations are not summarized, as they do not form the bases of any claims in this action. (*E.g.*, *id.*, p. 27.)

1   Plaintiff alleges that on March 27, 2009, and March 28, 2009, he showed the pill call

2 nurses his knee, but only one of them bothered to look at it.  (*Id*.)

3   On March 30, 2009, Plaintiff rolled up his mattress with the intention of laying it down at

4 the door of A-pod,[13] but his cellmate decided to give him the bottom bunk and he did not end up

5 needing to go back to the hole.  (*Id*.)

6   On April 3, 2009, Plaintiff was seen by Defendant Aw during sick call.  Defendant Aw

7 renewed Plaintiff's lower bunk restriction but the next day, Plaintiff's Ultram was discontinued

8 again.  Plaintiff began filing sick call request slips again and he called his defense attorney, who

9 said on April 11, 2009, that he would call Defendant Laird.  On April 14, 2009, Plaintiff received

10 Ultram and he had no further issues receiving it.

11     **5.**  **<u>Spinal Cyst</u>**

12   In November 2008, Plaintiff began experiencing increasing lower back pain due to a

13 walnut-size cyst on or near his spine.  (*Id*., p. 28.)  Plaintiff tried to obtain a second mattress to

14 ease his discomfort so he could sleep better at night.  (*Id*.)  Plaintiff alleges that the "inflamed"

15 cyst is documented in his medical records and "had the defendants, FCJ Administrator Hill and

16 JMS's [sic] Drs. Laird and Aw, had a shred of human decency and simply honored their own

17 word, the Plaintiff would not be writing this today.  An absolute 'simpleton' of a layman would at

18 least let Plaintiff use a 2nd mattress – it's done in every jail Plaintiff was ever in in his 'extensive

19 criminal history.'   The surgery to remove the cyst allegedly scheduled by Defendant Aw, on

20 January 8, 2009, could have simply been followed through with, but here we are."  (*Id*.)

21   Plaintiff alleges that his sick call requests were ignored and he repeatedly asked custody

22 staff for a second mattress.  (*Id*.)  Plaintiff filed a grievance on November 15, 2008, which was

23 found "not sustained."   (*Id*.)   Meanwhile, medical staff told Plaintiff that custody staff must

24 provide the second mattress.  (*Id*.)

25   On January 8, 2009, Plaintiff saw Defendant Aw, who told him they were scheduling

26 surgery to remove the cyst.  (*Id*.)  Defendant Aw told Plaintiff to "keep after" custody staff about

27 the second mattress.  (*Id*.)

28

---

[13] This was apparently a way of seeking a move to the hole or other housing.

1   On January 14, 2009, Plaintiff talked to Corporal Nichols in Defendant Hill's chain of

2   command about his request for a second mattress. (*Id.*) Plaintiff said that Defendant Aw told him

3   all he had to do was ask for a second mattress, but Corporal Nichols did not provide a second

4   mattress. (*Id.*) Plaintiff alleges he was convinced by then that he was not getting anything

5   because he was a sex offender, grievance writer, and complainer. (*Id.*)

6   Plaintiff did not receive the surgery and he filed a grievance on January 24, 2009, which

7   was denied by Defendant Hill on February 13, 2009. (*Id.*, p. 29.)

8   Plaintiff talked to Defendant Aw on February 3, 2009, but he did not receive a second

9   mattress and he was told the surgery was pending. (*Id.*)

10   On April 9, 2009, Defendant Aw requested approval from Defendant Narayen for a

11   narcotic pain medication. (*Id.*) The medication was approved on April 13, 2009, but Plaintiff did

12   not receive it until June 4, 2009. (*Id.*)

13   Plaintiff filed a grievance on April 9, 2009, regarding lack of surgery and a second

14   mattress, and inadequate pain medication. (*Id.*) The grievance was refused by an officer on April

15   9, 2009, and Plaintiff rewrote it to state that Defendant Aw took away his Ultram and denied him

16   outpatient surgery to remove the cyst; he had written ten sick call requests; and he wanted to be

17   transferred to a more humane jail. (*Id.*) "JMS Defendants" and Defendant Weldon denied the

18   grievance on April 22, 2009, and Plaintiff alleges they "were more worried about Plaintiff's

19   generating paperwork that complicated their lives than whether or not Plaintiff's claim had merit."

20   (*Id.*)

21   The next day, Defendant Narayen approved Vicodin for Plaintiff, and Defendants Laird

22   and Aw "effectively gagged Plaintiff down to one medical grievance per week." (*Id.*, pp. 29, 30.)

23   On May 29, 2009, Plaintiff submitted a sick call request slip stating that his pending

24   lawsuit against Defendant Laird and many other defendants would be amended to include the cyst

25   issue. (*Id.*, p. 30.)

26   On May 30, 2009, Plaintiff talked to Sergeant Blathers, who was a defendant in another

27   lawsuit, about a second mattress and he was again told to write another request to "JMS

28   Defendants." (*Id.*) Sergeant Blathers told Plaintiff she would see what she could do to get JMS to

1  approve another mattress.  (*Id.*)  On June 2, 2009, "JMS Defendants" denied Plaintiff a second

2  mattress.  (*Id.*, pp. 30, 89.)  The written decision informed Plaintiff that medical staff provides

3  mattresses only to female inmates in their last trimester and if custody staff wants to provide

4  Plaintiff with a mattress, they may do so.  (*Id.*, p. 89.)

5      Plaintiff was transferred from the jail on June 16, 2009, and his cyst was surgically

6  removed on October 18, 2010, at a Bureau of Prisons facility.  (*Id.*)

7      **C.**   **Claims**

8          **1.**   **Retaliation Claims**

9      Allegations of retaliation against a prisoner's First Amendment rights to speech or to

10  petition the government may support a claim under section 1983.  *Silva v. Di Vittorio*, 658 F.3d

11  1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also*

12  *Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807

13  (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails

14  five basic elements: (1) An assertion that a state actor took some adverse action against an inmate

15  (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

16  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

17  correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v.*

18  *Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d

19  1262, 1269 (9th Cir. 2009).

20      In this case, Plaintiff had a right to file grievances and pursue lawsuits without retaliation

21  from jail staff.  However, Plaintiff's claims of retaliation are premised upon mere conclusory

22  assertions that he was retaliated against for complaining in grievances and lawsuits.  Plaintiff fails

23  to allege any specific facts supporting a claim that he was subjected to adverse actions (retaliated

24  against) by defendants County of Fresno, Dr. Moreno, Dr. Laird, Dr. Narayen, Dr. Aw, Captain

25  Hill, Captain Weldon, and/or the five John Does because of his pursuit of grievances and/or

26  lawsuits.  Plaintiff was previously given leave to amend to cure the deficiencies in his retaliation

27  claim and further leave to amend is not warranted.  Plaintiff's retaliation claims are dismissed,

28  with prejudice, for failure to state a claim under section 1983.

1

### 2.      Due Process Claim

2        Plaintiff alleges that he was deprived of a liberty interest without due process of law.

3   However, the underlying basis for that legal claim is unclear, and Plaintiff's second amended

4   complaint is devoid of any facts which support the existence of a viable claim.

5        "The Fourteenth Amendment's Due Process Clause protects persons against deprivations

6   of life, liberty, or property; and those who seek to invoke its procedural protection must establish

7   that one of these interests is at stake."  *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384

8   (2005).  Plaintiff has not identified the existence of a protected liberty interest at stake.  Inmates do

9   not have a protected liberty interest in a grievance process, *Ramirez v. Galaza*, 334 F.3d 850, 860

10  (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), and Plaintiff's conditions of

11  confinement claims arising out of inadequate medical care and endangerment of his safety are

12  redressable under the Eighth Amendment's deliberate indifference standard, discussed below in

13  section III(C)(3), *Simmons*, 609 F.3d at 1017-18; *see County of Sacramento v. Lewis*, 523 U.S.

14  833, 843, 118 S.Ct. 1708  (1998) (if a constitutional claim is covered by a specific constitutional

15  provision, the claim must be analyzed under the standard appropriate to that specific provision, not

16  under the rubric of substantive due process) (quotation marks and citation omitted).

17       Accordingly, the Court finds that Plaintiff fails to state a claim for deprivation of a

18  protected liberty interest without due process of law.  Based on the nature of the deficiencies,

19  further leave to amend is not warranted and the claim is dismissed, with prejudice.

20

### 3.      Medical Care Claims

21

#### a.      Legal Standard

22       As a pretrial detainee, Plaintiff is protected from conditions of confinement which amount

23  to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535-36, 99 S.Ct. 1861 (1979); *Simmons*, 609 F.3d at

24  1017-18; *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010).   While

25  pretrial detainees' rights are protected under the Due Process Clause of the Fourteenth

26  Amendment, the standard for claims brought under the Eighth Amendment has long been used to

27  analyze pretrial detainees' conditions of confinement claims.  *Simmons*, 609 F.3d at 1017-18;

28  *Clouthier*, 591 F.3d at 1242; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).   Thus,

18

1   Plaintiff's claims are subject to the same analysis for the entire period of his incarceration at the

2   jail, irrespective of the pretrial detainee/convicted prisoner distinction during that time.

3       Inmates are entitled to medical care, and the Constitution is violated when jail officials act

4   with deliberate indifference to an inmate's serious medical needs.  *Snow v. McDaniel*, 681 F.3d

5   978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076,

6   1083 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439

7   F.3d 1091, 1096 (9th Cir. 2006).   Plaintiff "must show (1) a serious medical need by

8   demonstrating that failure to treat [his] condition could result in further significant injury or the

9   unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was

10  deliberately indifferent."  *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d 1091, 1096 (9th Cir.

11  2006)).   Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a

12  prisoner's pain or possible medical need, and (b) harm caused by the indifference."  *Wilhelm*, 680

13  F.3d at 1122 (citing *Jett*, 439 F.3d at 1096).   The requisite state of mind is one of subjective

14  recklessness, which entails more than ordinary lack of due care.  *Snow*, 681 F.3d at 985 (citation

15  and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

16                          **b.    <u>Objective Element</u>**

17      The existence of an injury that a reasonable doctor would find important and worthy of

18  comment or treatment, the presence of a medical condition that significantly affects an

19  individual's daily activities, and/or the existence of chronic or substantial pain are indications of a

20  serious medical need.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

21      At the pleading stage, Plaintiff's allegations concerning his knee condition, constipation,

22  hypoglycemia, and spinal cyst suffice to support the existence of serious medical needs.  However,

23  even assuming a diet of 1800 calories per day would have been inadequate to maintain Plaintiff's

24  health long term, *see Graves v. Arpaio*, 623 F.3d 1043, 1050 (9th Cir. 2010), he was on the 1800

25  diet for only one week and such a short term deprivation does not support a claim for violation of

26  the Eighth Amendment, *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2565 (1978); *LeMaire v.*

27

28

                                        19

1    *Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).   Thus, the short-term change in diet from 2200

2    calories to 1800 calories does not support a constitutional claim.[14]

3                          **c.    Subjective Element**

4                          **1)    Placement in Medically Inappropriate Housing**

5          Under section 1983, Plaintiff must link the named defendants to the participation in the

6    violation at issue.  *Iqbal*, 556 U.S. at 676-77; *Simmons*, 609 F.3d at 1020-21; *Ewing v. City of*

7    *Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.

8    2002).  Liability may not be imposed under a theory of *respondeat superior*, and there must exist

9    some causal connection between the conduct of each named defendant and the violation at issue.

10   *Iqbal*, 556 U.S. at 676-77; *Lemire*, 726 F.3d at 1074-75; *Lacey v. Maricopa County*, 693 F.3d 896,

11   915-16 (9th Cir. 2012) (en banc); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert.*

12   *denied*, 132 S.Ct. 2101 (2012).

13         Although Plaintiff's allegations suffice to support his claim that his knee issue was a

14   serious medical need in that it caused him pain and his condition rendered the use of stairs

15   medically inappropriate, he fails to allege facts linking the named defendants to actions or

16   omissions which support an inference of deliberate indifference.  Plaintiff alleges that Defendants

17   Weldon and Hill's offices were "implicated," and that his medically inappropriate housing was

18   within their "sphere of responsibility," but these are mere conclusory allegations suggesting

19   nothing more than an attempt to hold them vicariously liable for the conduct of their subordinates.

20         Likewise, the conclusory allegation that the five Doe defendants "threw" him back into the

21   housing unit with stairs despite his visibly swollen knee does not suffice to support a claim that

22   they knowingly disregarded a substantial risk of harm to his health.  "Deliberate indifference is a

23   high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this

24   standard, the prison official must not only 'be aware of the facts from which the inference could be

25   drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

26   inference.'"  *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been

27   ───────────────

[14] Plaintiff's allegations that he was cold and hungry remain relevant to the extent they resulted from his
28   hypoglycemia, as he alleges.

aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).   While the Court is cognizant that this is only the pleading stage, Plaintiff's conclusory allegation is nevertheless insufficient to support a claim of deliberate indifference against the Doe defendants for rehousing him.

Finally, Plaintiff's general allegations against Defendants Aw and Laird regarding his housing and pain medication, summarized in section II(B)(4) addressing Plaintiff's hypoglycemia, do not support a claim against them for deliberate indifference.

This claim is dismissed, with prejudice, for failure to state a claim.

### 2)   Constipation

Plaintiff's allegations also do not support a claim that Defendant Aw was deliberately indifferent to his need for relief from his constipation. To the contrary, Plaintiff's allegations demonstrate that every time he saw Defendant Aw at sick call, Aw provided him with medical care which was appropriate and relieved his constipation.

With respect to Defendant Laird, Plaintiff's allegations are nothing more than conclusory assertions of responsibility.  With respect to Plaintiff's grievance, it appears that Defendant Laird *may* have determined that the grievance was "not sustained" at the Bureau Commander's level of review, but the mere fact that a higher-level administrator concurred with a lower-level employee's investigation and resolution of a grievance does not suffice to support a claim of subjective deliberate indifference, *see Peralta*, 744 F.3d at 1086-87, and Plaintiff's assertion that Defendant Laird ridiculed his medical problem is contracted by a reading of the grievance.[15]

Moreover, there is no factual support for Plaintiff's bare assertion that Defendant Laird was angry with him because his defense attorney contacted Laird.  Instead, Plaintiff's only specific example of communication between his counsel and Defendant Laird reveals that defense counsel sent a memorandum to Laird on June 1, 2009, notifying him that Plaintiff was complaining of severe digestive problems and requesting that medical staff check on Plaintiff.  In response to the

---

[15] The signature suggests it *could* be that of George Laird.

1  memo, which was neutral in tone, Plaintiff alleges he received milk of magnesia on a regular basis

2  until he was transferred from the jail on June 16, 2009.  Next, allegations that Defendant Laird was

3  aloof, uncaring, and unqualified to administer health care to inmates are mere conclusions

4  regarding personality and competency, which do not show Laird acted with deliberate indifference

5  toward Plaintiff's constipation.

6      Finally, neither the allegation that Defendant Hill concurred with the staff member's

7  determination that Plaintiff's grievance was "not sustained" nor the allegation that he enforced the

8  jail's policy regarding availability of milk of magnesia to inmates via commissary supports a

9  claim that Defendant Hill acted with deliberate indifference to Plaintiff's constipation.[16]

10      This claim is dismissed, with prejudice, for failure to state a claim.

11                    **3)      Hypoglycemia**

12      Plaintiff alleges that he was extremely hungry and sensitive to the cold, both of which were

13  side effects from his low blood sugar.  However, Plaintiff's allegations do not support a claim that

14  Defendant Aw, Plaintiff's treating physician at the jail, was deliberately indifferent to his

15  condition.  Defendant Aw authorized an additional snack for Plaintiff on January 10, 2009.[17]

16  Furthermore, Plaintiff's allegations show, vis a vis the "chem stick" testing, that medical staff was

17  monitoring Plaintiff's condition, and Plaintiff's exhibits demonstrate that his decision to forego the

18  testing on February 20, 2009, was not met with approval by medical staff.  Although Plaintiff

19  alleges that based on the medical care he now receives through the Bureau of Prisons, he should

20  have been given glucose tablets at the jail, neither different medical care at another institution nor

21  Plaintiff's mere disagreement with the course of treatment provided supports a claim.  *Snow*, 681

22  F.3d at 987; *Wilhelm*, 680 F.3d at 1122-23.  In sum, Plaintiff's allegations do not support a claim

23  that Defendant Aw, or any other named defendant, was subjectively deliberately indifferent

24  toward his low blood sugar condition.

25      This claim is dismissed, with prejudice, for failure to state a claim.

26

[16] The signature at the Lieutenant or Unit Supervisor's level of review suggests it *could* be that of Defendant Hill.

27

28  [17] Although Plaintiff alleges his diet was also reduced to 1800 calories, the short-term reduction itself does not support a claim, as previously discussed; at the time of the diet change, Plaintiff did not have a prior hypoglycemic attack; and his diet was quickly changed back in light of the hypoglycemic attack he experienced.

#### 4)   <u>Spinal Cyst</u>

With respect to the spinal cyst, although Plaintiff did not receive surgery to remove the cyst during the five month period between Defendant Aw's recommendation/referral and Plaintiff's transfer to federal prison, neither did Plaintiff receive the surgery immediately following his transfer to federal prison.   The Court finds there is simply insufficient factual support for a claim that (1) Plaintiff's need for surgery to remove the cyst was so urgent and obvious that the five month delay rose to the level of deliberate indifference, or (2) Defendant Aw was culpable for any delay.   *See Wilhelm*, 680 F.3d at 1123 (inmate stated Eighth Amendment claim where he did not receive recommended hernia surgery for more than one year and the delay was attributable to the physician's failure request the referral properly and inexplicable cancellation of the second referral); *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (no basis for finding of deliberate indifference where there was no evidence that the delay of three years from original injury and the delay of three months following clear need for surgery was the fault of the inmate's treating physicians); *Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989) (triable issues of fact where inmate went eight months without dentures, resulting in severe pain, permanent teeth damages, and the inability to eat food properly).

Furthermore, although Plaintiff sought a second mattress to aid him in sleeping better at night, Plaintiff's exhibits demonstrate he was provided with medical treatment in the form of pain medication, [18] and there is no factual support for an Eighth Amendment claim based on the mere failure to provide Plaintiff with a second mattress.   Plaintiff's allegations indicate that while Defendant Aw did not oppose Plaintiff obtaining a second mattress from custody staff, he did not

---

[18] While the Court recognizes Plaintiff's frustration in having to work within an institutional system he found lacking, the fact that Plaintiff's pain medication was discontinued on several occasions and then reinstated after a visit to the doctor is not constitutionally suspect.   Even in the free world, prescriptions expire and doctors find it necessary to reevaluate patients prior to renewing prescriptions.

1  determine that Plaintiff had a medical need for one such that the failure to ensure a second

2  mattress supports a claim of deliberate indifference.[19]

3      Finally, there are no allegations supporting a claim that any other named defendant acted

4  with deliberate indifference toward Plaintiff's medical condition related to his spinal cyst, and this

5  claim is dismissed, with prejudice.

6              **4.    Failure to Protect Claim**

7      Turning to the mentally unstable cellmate, Plaintiff's allegations are sufficient to support

8  his claim that the placement of the mentally ill inmate in his cell on February 2, 2009, presented,

9  objectively, a substantial risk of serious harm to his safety.   *Clouthier*, 591 F.3d at 1242.

10  However, although Plaintiff alleges that jail staff was aware of the inmate's predisposition toward

11  violence and his need for medication, Plaintiff's second amended complaint is devoid of any facts

12  showing that the named defendants possessed the requisite subjective mental state of deliberate

13  indifference.  *Id.*

14      Plaintiff was previously provided with the applicable deliberate indifference standard and

15  he was notified of the requirement that he allege facts linking the named defendants to culpable

16  actions or omissions.  Therefore, further leave to amend is not warranted and his failure to protect

17  claim is dismissed, with prejudice.

18              **5.    Municipal Liability**

19      Finally, notwithstanding the fact that Plaintiff fails to state any claims against individual

20  staff members, the Court notes Plaintiff's failure to allege facts supporting a plausible claim that

21  his constitutional rights were violated due to the existence of an unconstitutional policy, pattern, or

22  practice attributable to the county officials.  The County of Fresno and county officials acting in

23  their official capacities may not be held liable under section 1983 for the actions of subordinate

24  county employees on the basis of vicarious liability, or *respondeat superior*; municipal liability

25  lies only if the violation of Plaintiff's constitutional rights was the direct result of a policy or

26

27

28

[19] To the extent the jail's apparent policy of providing medical mattresses only to female inmates in their third trimester of pregnancy might run afoul of the Constitution under some circumstances, this is not *that* case.  Plaintiff's allegations do not support a finding that he had an objectively serious medical need necessitating a second mattress.

1  longstanding pattern or practice.[20]  *E.g.*, *Connick v. Thompson*, __ U.S. __, __, 131 S.Ct. 1350,

2  1359 (2011); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-92, 98 S.Ct.

3  2018 (1978); *Jackson v. Barnes*, 749 F.3d 755, 762-63 (9th Cir. 2014); *Gravelet-Blondin v.*

4  *Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013); *Clothier*, 591 F.3d at 1249.  Here, the facts alleged

5  are insufficient to support such a claim.

6  **IV.    Conclusion and Order**

7          Based on the foregoing, the Court finds that Plaintiff fails to state any claims upon which

8  relief may be granted under section 1983.  Specifically, Plaintiff fails to set forth facts supporting a

9  claim that he was retaliated against for filing grievances and lawsuits or that he was deprived of a

10  protected liberty interest without due process; and although Plaintiff alleges sufficient facts to

11  support the existence of objectively serious medical and safety needs, he fails to set forth facts

12  supporting his claim that the named defendants acted with deliberate indifference toward those

13  needs.  Given the nature of the deficiencies at issue in light of the previous screening orders,

14  further leave to amend will not be granted.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir.

15  2012); *Lopez*, 203 F.3d at 1130-31; *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

16          Accordingly, this action is HEREBY ORDERED DISMISSED, with prejudice, for failure

17  to state a claim under section 1983, and the Clerk's Office SHALL enter judgment.

18

19  IT IS SO ORDERED.

20  Dated:   August 22, 2014                    _____

21                                              SENIOR  DISTRICT  JUDGE

22

23

24

25

26

27

28  _____
[20] Municipal liability may also arise from failure to train and ratification theories.  *Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211, 1230-31 (9th Cir. 2014); *Clothier*, 591 F.3d at 1250-51.